## A DUPERRIER *v.* B. DAUTRIVE et al.

Remarks made by a slave, in conversation, and consisting merely of a detailed narrative of a past occurence, should not be received in evidence, as forming part of the *res gestœ*.

Two members of a patrol company while on duty hailed a slave, at night, who was riding into a village. The slave attempted to escape, whereupon the patrol fired on him, and inflicted wounds of which he died. In an action by the master, against the patrol who shot his slave, for damgaes. *Held :* That the plaintiff could not, under the circumstances of the case, recover.

A PPEAL from the District Court of the Parish of St. Martin, *A. Voorhies*, J. S. G. Olivier, for plaintiff and appellant. *Simon & Gory*, for defendant.

LEA. J.   The plaintiff claims from the defendants, *Bernard Dautrieve* and *Joseph Boretté*, the value of a slave who, he alleges, was unnecessarily and wantonly shot and mortally wounded by said *Dautrieve*, assisted by said *Borretté*, on the night of the first of August, 1855, of which wound or wounds his said slave died, on the ensuing day.

The defendants, in addition to a general denial, specially plead that, on the night in question, they were called out and summoned to compose the patrol of the town of New Iberia, in accordance with the police regulations and by-laws of the town council ; that having been stationed on the upper limits of said town, and, while on duty, a negro man on horseback, unknown to respondents and to the patrol, made his appearance on the public road, and was about entering said town, when, on being ordered several times to stop and surrender, (the said negro being, by them, considered, and being in fact, a runaway slave,) he, the said slave, instead of surrendering himself,·as he was bound to do, turned back and ran away from said patrol, galloping as fast as the speed of his horse would permit ; and that respondents were ordered to fire upon said negro, who, though fired upon, escaped. They further aver that the death of said slave, was the consequence of the lawful act of those composing the patrol, for which, under the laws of the State, and the facts and circumstances of the case, they are not responsible.

On the trial of the case, a witness was offered to prove the declarations made by the slave upon his return home after he was shot: These declarations were admitted as forming part of the *res gestæ* of the transaction.

We think that remarks made in conversation consisting merely of a detailed narrative of a past occurrence by a person himself, incompetent to testify, should not have been received as forming a part of the *res gestæ* connected with the occurrence itself. We therefore reject all that part of the testimony which consists in the declarations of the slave. From the statement of the facts as detailed by those who accompanied the defendants as belonging to the patrol, and as developed in the testimony of other witnesses, we consider it conclusively established, that the plaintiff's slave was not a runaway, but was a valuable and confidential slave; that he was going on horseback with the full assent and standing permission of his master, to the residence of *Mrs. Dubuclet*, with whom his wife resided, in the town of New Iberia, but, that while on his way, in the public road, at about 11 o'clock at night, when about entering the town, he was ordered to stop by the patrol. That the slave did stop as he was ordered to do, but, either for the purpose of escaping because of his apprehension of the consequences of an arrest, or in consequence of the shyness of an unbroken horse, he started back in a gallop, when the defendants, both of whom were armed with shotguns, fired upon him three times when at a distance of about thirty-five yards, after having previously called upon him to stop. The negro being mortally wounded, returned home and died the next day.

Under the circumstances, the defendants, who were charged with duties as members of the patrol, were authorized to infer that the defendant's slave was endeavoring to escape a lawful arrest. Recent disorders among the slaves in and about the town of New Iberia, had made it a matter of importance that the laws relative to the police of slaves, should be strictly enforced. The slave in question was repeatedly called upon to stop, and it was not until there was every reason to suppose that he would otherwise effect his escape, and that he could not be overtaken by pursuit, that the defendants fired upon him. In so doing, we think they were protected by the terms of the 65th section of the Act of 1855, which provides that if any slave shall be found absent from his usual place of working, or residence, without some white person accompanying him, and shall refuse to submit himself to examination, any free holder may be permitted to seize and arrest him, and if he should resist, or attempt to make his escape, the freeholder is authorized to make use of arms, but to avoid killing the slave; but should the slave assault and strike him, he is authorized to kill him. The "use of *arms*" without the desire, or deliberate intention of killing, necessarily implies at least a risk of killing, and this phrase was, we think, intended to embrace cases similar to that now under consideration.

It is ordered that the judgment appealed from be affirmed.